## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  19-cr-00140-RBJ

UNITED STATES OF AMERICA

      Plaintiff,

v.

1. MATTHEW MARRE,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by Jason R. Dunn, United States Attorney for the District of Colorado, through Assistant United States Attorney Gregory A. Holloway, and the defendant, Matthew Marre, personally and by counsel, Matthew Belcher, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.  AGREEMENT

The defendant agrees to plead guilty to the Counts 1 through 8, inclusive, of the Superseding Indictment, charging the following violations:  In Counts 1 through 8, violations of Title 18, United States Code, Section 1039, Fraud in Connection with Obtaining Confidential Phone Records. The defendant also agrees to waive certain appellate rights, as explained in greater detail below.

The defendant further agrees to relinquish to the United States all claim, title and interest the defendant has in the following firearms seized from the residence of co-

```
COURT
EXHIBIT
1
```

conspirator Ryan Medhurst: (1) Sig Sauer P-226 9 mm pistol S/N: 66-786504; (2) Sig Sauer

P-239 9 mm pistol S/N: SA-35986 with magazine containing nine (9) rounds; (3) Heckler and

Koch USP 40 .40 caliber pistol S/N: 22091411; (4) Ruger 22/45 Mark 3 .22 caliber pistol S/N:

22850193; (5) Rebel .260 Rem rifle with US Optics scope S/N: D0215; (6) Ruger 10/22 .22

caliber rifle S/N: 35185510; (7) Savage Model 12 .22-.250 Rem with Vortex Scope S/N:

H202949; (8) JC Higgins Model 36 .22 caliber rifle with scope S/N: 2552429; (9) POF USA

Model P415 .223 caliber rifle with Vortex scope and suppressor S/N: 0904288; (10) Russian rifle

.762 caliber B155497/ S/N: 10237; (11) Remington 870 12 gauge shotgun S/N: RS82252B; (12)

Remington 878 12 gauge shotgun S/N: 47626L; (13) Remington 597 .22 caliber rifle S/N:

B2679831; and (14) Remington 7615 .223 caliber pump action rifle S/N: B8533290.

In exchange for the defendant's plea of guilty and waiver of certain appellate

rights, the United States agrees to: (1) recommend the Court give the defendant full

credit for acceptance of responsibility per United States Sentencing Guidelines (USSG)

§ 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of

justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of

the guilty plea and sentencing; (2) recommend a sentence at the bottom of the guideline

range as ultimately calculated by the Court; and (3) agree not to charge the defendant

with any additional violations based on facts and evidence currently known to the U.S.

Attorney's Office for the District of Colorado, specifically prosecution of the defendant

for additional violations of Title 18, United States Code, Sections 1039 and 922(g)(1),

Possession of a Firearm by a Prohibited Person. Pursuant to Rule 11(a)(2) of the

Federal Rules of Procedure, the defendant reserves the right to appeal the Court's

ruling regarding application of the multiple count adjustment in Section VI (D), *infra*.

The defendant agrees to waive other appellate rights as set forth and detailed below.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 14; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II. **ELEMENTS OF THE OFFENSE**

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

3

For Counts 1 through 8, Fraud in Connection with Obtaining Confidential Phone Records:[1]

*First*, the defendant did knowingly and intentionally obtain, or attempt to obtain confidential phone records information from a covered entity;

*Second*, the defendant did so by making false and fraudulent statements and representations to an employee of a covered entity; or, provided a document to a covered entity knowing such document was false and fraudulent; and

*Third*, the defendant's statements and representations or documents obtaining or attempting to obtain the confidential phone records information was in interstate or foreign commerce.

"Confidential Phone Records Information" means information that relates to the quantity, technical configuration, type, destination, location or amount of use of a service offered by a covered entity, subscribed to by any customer of that covered entity, and kept by or on behalf of that covered entity solely by virtue of the relationship between that covered entity and the customer.[2]

"Covered Entity" means any provider of telecommunications services.[3]

/////

---

[1] *Title 18, United States Code, Section 1039.*
[2] *Title 18, United States Code, Section 1039(h)(1)(A).*
[3] *Title 47, United States Code, Section 153(51), as referred by Title 18, United States Code, Section 1039(h)(2)(A).*

## III.  **STATUTORY PENALTIES**

The statutory penalty for Counts 1 through 8 is not more than 10 years imprisonment, not more than a $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee, each count.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV.  **COLLATERAL CONSEQUENCES**

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V.  **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

5

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in March of 2018 and the date on which relevant conduct ended is April 2, 2019, both dates being approximate and inclusive.

The parties further agree as follows:

On November 26, 2018 the FBI Rocky Mountain Safe Streets Task Force (RMSSTF) was contacted about possible fraud in connection with emergency requests made to cell phone carriers for location assistance. Each of the four carriers -- Sprint Corporation, Verizon Wireless, T-Mobile USA, and ATT Wireless -- have 24 hour Law Enforcement assistance operators that are available to assist in emergencies across the United States to aid any law enforcement agency that is involved in an emergency that potentially involves death or serious bodily injury.

Information is provided by these cell phone companies with legal court process compelling the companies to assist law enforcement; or, in an emergency, without legal process if the situation potentially involves death or serious bodily injury that could occur without immediate action.

Verizon Wireless advised that since June of 2018 until November 2018, five emergency requests for cell phone data were made on the Verizon Law Enforcement Help Center by a male who identified himself as Matthew Marre, claiming to be an investigator for the "Colorado Department of Public Safety" and the "Colorado Task

6

Force." During all five calls Verizon believed Marre was acting in the capacity of a law enforcement officer requesting immediate release of cell phone information from Verizon Wireless under federal laws 18 U.S.C. § 2702(b) and/or 18 U.S.C. §2702(c)(4) authorizing emergency disclosure. Each time Marre claimed an emergency that potentially involved the danger of death or serious physical harm. Verizon released the requested cell phone records to include GPS location to Matthew Marre.

On the fifth call in November of 2018, Verizon employees became suspicious that Marre may not be a law enforcement officer. When Verizon employees called Marre back to verify he was with a law enforcement agency, they found that the number provided by Marre did not belong to a legal law enforcement agency. Verizon notified the FBI that confidential phone records information to include GPS data was released to a Marre after Marre fraudulently claimed to be a law enforcement officer.

Investigators researched the phone numbers used by Marre for these requests, which were 720-354-0721 and 970-408-0773. Publicly available information verified these numbers were used by Matthew Marre. Multiple public sources, as well as law enforcement data bases, show Matthew Marre is working as a contractor for at least three Bail Bonds companies to locate and detain persons who have court bonds posted throughout various courts in the state of Colorado. The common or "street" term for this job action is often called a "bail bondsman", "bounty hunter" and "fugitive recovery agent", all who are private citizens with no law enforcement power under state or federal law. Further, Marre was previously convicted of a felony and was thus ineligible for employment as a law enforcement officer. Investigation revealed that Marre was fraudulently obtaining the confidential phone records information, specifically GPS

7

location data, in order to gain commercial advantage and economic gain in his work as a bounty hunter.

Believing Marre might have been in contact with the other three main national cell phone companies, investigators contacted ATT, T-Mobile and Sprint Wireless law enforcement assistance departments to see if Marre fraudulently obtained confidential phone records information from them as well. Investigation showed that he had done so.

**Verizon Wireless**

Verizon, whose corporate offices are located in New Jersey, reported that they had six separate cases where a person:

1. Represented himself to be Investigator Matthew Marre;

2. Used the phone number 720-354-0721 to make requests; and,

3. Indicated exigent circumstances by claiming the targets of the requests were suicidal.


**Count 1**

On June 23, 2018 Marre called the Verizon Wireless law enforcement assistance line and requested a location service on cell phone number 802-323-9137. A Verizon employee emailed Marre the "VERIZON EMERGENCY SITUATION DISCLOSURE" form for Marre to fill out for his request. Marre completed the form and sent it back to Verizon. Marre submitted the form falsely claiming to be a law enforcement officer, stating that he was an investigator for the Colorado Department of Public Safety, 700 Kipling St, Denver Colorado 80215, with a phone number of 970-408-0773 and email

address of Matthew.Marre@COTF.us. Marre also falsely certified on the form that the request potentially involved danger of death or serious physical injury to a person,[4] necessitating the immediate release of information relating to that emergency. The signature line on the form has the oath statement of "I certify that the foregoing is true and correct and understand that Verizon Wireless may rely on this form to make an emergency disclosure to my law enforcement agency or government entity pursuant to 18 U.S.C. 2702 (b)(8) or 2702 (c)(4)." This form was signed "Matthew Marre" and dated 06/23/18.

Upon receipt of the form, a Verizon Wireless employee released location data to Marre for cell phone number 802-323-9137. On June 23, 2018 at 22:34, Marre called back to Verizon Law Enforcement line requesting an updated location service (GPS) for this number. Verizon provided the updated information to him at 00:25 a.m. on June 24, 2018.

**Count 3**

On October 20, 2018, Marre called the Verizon Law Enforcement Help Center and requested locator serviced (GPS) on cell phone 479-659-9352. Verizon emailed Marre an emergency form. A Verizon employee noted in their call logs that Marre claimed the emergency was a suicidal subject. Marre was provided location services to the number 479-659-9352. Marre called four more times to obtain updates on this cell phone location. Verizon notes show that updated data was provided to Marre. Marre sent Verizon another "VERIZON EMERGENCY SITUATION DISCLOSURE" dated

---

[4] The defendant's position is that he utilized this service when he believed there were actual exigent circumstances. Mr. Marre does admit, however, that he fraudulently represented himself and others to be law enforcement in order to obtain the confidential phone records information.

October 20, 2018 with false information on it, listing his law enforcement agency as "PSAP" and his email address as matthew.marre@cotf.us.  This form is signed by Marre attesting "I certify that the foregoing is true and correct and understand that Verizon Wireless may rely on this form to make an emergency disclosure to my law enforcement agency or government entity pursuant to 18 U.S.C. 2702 (b)(8) or 2702 (c)(4)."

**Sprint**

**Count 4**

Sprint, whose corporate offices are in Overland Park, Kansas, provided two requests made by Marre dated 11/09/2018 and 11/15/2018. For his request to Sprint dated 11/09/2018, Marre sent a four page document with a generic fax cover sheet. The second page of Marre's request was a cover letter from "COLORADO PUBLIC SAFETY", Fugitive Recovery Division, 308 Mountain View Avenue. Suite B., Johnstown CO 80513, (970)-408-0773.  This letter was from "Investigator Matthew Marre, Matthewmarre@cotf.us  (720)-354-0721(cell) and (970)-408-0773 (Main)."  This second page also included an insignia of a six pointed star badge, with a facsimile of the seal of the State of Colorado in the middle and the words "Colorado Public Safety Fugitive Recovery Agent" in the badge.

The third page of Marre's request was a fraudulently completed "STORED COMMUNICATION, GPS/PING EMERGENCY REQUEST FORM" which is a Sprint supplied form requiring specific information prior to releasing data.  Marre listed his law enforcement agency as the "Colorado Public Safety (Task Force)" and his official secure email as Matthewmarre@cotf.us.  Marre listed his supervisor as "Ryan

10

Johnson".  He also falsely stated on the form that the emergency was that "Subject made suicidal statements to family members and investigator".[5] "Subject has means to carry out threats".[6]  Marre requested "Call Detail Records WITH Cell Sites (last 7 days)" and "GPS (Location)*".  Marre signed the form and submitted it to Sprint.

The second request to Sprint made by Marre was dated 11/15/2018.  Marre's second request was for the same number as the first.   He made the same false claims about being a law enforcement officer and that the emergency involved a suicidal subject.[7]  Marre requested call detail records with cell sites for the past 7 days as well as GPS location.  This second document was signed "Matthew Marre".  Sprint provided the confidential phone records information requested.

**T-Mobile**

T-Mobile, which corporate offices are located in New Jersey, indicated they had nine separate cases where a person did the following:

1. Represented himself to be Investigator Matthew Marre;

2. Used phone number 720-354-0721 each time he called; and

3. Represented exigent circumstances claiming in all nine below listed cases the targets of the ping requests were suicidal and had the means to carry out the suicide.

Further, all T-Mobile requests were emailed to and from Matthew.Marre@cotf.us; and, all requests included the T-Mobile/Metro PCS Exigent Form.  This form was

---

[5] The defendant's position is that he utilized this service when he believed there were actual exigent circumstances.  Mr. Marre does admit, however, that he fraudulently represented himself and others to be law enforcement.
[6] The defendant's position is that he utilized this service when he believed there were actual exigent circumstances.  Mr. Marre does admit, however, that he fraudulently represented himself and others to be law enforcement.
[7] The defendant's position is that he utilized this service when he believed there were actual exigent circumstances.  Mr. Marre does admit, however, that he fraudulently represented himself and others to be law enforcement.

completed by Mathew Marre and returned to T-Mobile on each of the nine requests.
The provided information on the form is as follows:

Name of Government Entity:  Colorado Public Safety-Fugitive Task Force

Government Entity Street Address:  308 Mountain View Ave Johnstown, CO 80513

Government Entity Phone:  720-354-0721

REQUESTING OFFICER/AGENT NAME, TITLE/BADGE OR ID#:  Matthew Marre,
Investigator (6003)

OFFICER/AGENT E-MAIL:  Matthew.Marre@cotf.us.

All nine forms had the same oath printed that stated in part "I Understand that I
may be held liable for civil and/or criminal penalties either as an individual, as an
organization, or both. By signing this form, I certify the information herein is true and
correct. Pursuant to 18 U.S.C. 2518, 2702, 3125 and any other applicable Federal or
State statute" and later in the same oath  "This request is made pursuant to 47 U.S.C.
222 (g) , 18 U.S.C. 2702 and 47 C.F.R. 20.18 and subject to state and federal perjury
penalties." All nine forms were dated and signed "Matthew Marre".

**Counts 2, 5, and 6**

On September 15, 2018, Marre fraudulently requested and obtained "Continuous
Location (pings every 15 min for 48 hours)" for 719-896-9907. **[Count 2]**  On July 13,
2018 Marre fraudulently requested and obtained "Continuous Location (pings every 15
min for 48 hours)" for 720-281-6703. **[Count 5]**  On August 26, 2018 Marre fraudulently
requested and obtained "Continuous Location (pings every 15 min for 48 hours)" for
303-842-8350. **[Count 6]**.  T-Mobile sent Marre the requested confidential phone
records information as a result of his fraudulent representations.

**Count 7**

Investigators reviewed law enforcement records and found that on March 23, 2018 Matthew Marre contacted the Arapahoe County Sheriff's Department Dispatch Center in Arapahoe County Colorado.  Marre stated he and his coworker (later identified as C.D.) were bondsman and believed that a person they were looking to detain on bond violations, a person named Christian Roberts, was burglarizing a residence in Arapahoe County Colorado.  Uniformed Arapahoe County Sheriff Deputy Mackay responded to Marre's location of 7550 South Blackhawk Street in Arapahoe County and contacted Matthew Marre and C.D. at an apartment complex.  C.D. advised Deputy Mackay that he and Marre had a "ping" on their wanted person's cell phone that showed the suspect in the east of the complex. As Sheriff Deputies were looking for Roberts, Marre and C.D. located and handcuffed Roberts in a field and re-contacted Sheriff Deputies.

During the interview of Marre by Arapahoe Sheriff Deputies, Marre advised he owns "Colorado PSC LLC", and was contracted by "Detail Bail Bonds to recover Christian Roberts" after he [Roberts], failed to show up in court on charges for which he was on bond.

Marre advised Sheriff Deputies that he and C.D. initially found Roberts, but lost him [Roberts] in a foot chase.  Marre further said they (Marre and C.D.) went back to their truck to "refresh the suspect's GPS location on our laptop."  Marre then advised deputies "the new GPS Ping put the suspect on the southeast side of the complex" where Marre and C.D. located Roberts hiding by bushes.

C.D. was interviewed by Arapahoe County Sheriff's deputies who advised that he works for "Colorado PSE" as a "bail enforcement" person. C.D. said that on March 23, 2018, he and Marre were looking for Christian Roberts. C.D. explained that he and Marre observed Roberts momentarily, and then lost sight of him. Marre and C.D. returned to their truck, and per C.D., an "updated location ping came in." C.D. continued and stated that "tracking that ping took us to the middle of the field" where Marre and C.D. located Roberts.

The "pinging" of a cell phone can only be done by law enforcement in cooperation with a cell phone carrier that provides service to the specific cell phone. The fraudulent request made by Marre and his co-conspirator was confirmed by T-Mobile as having been made by Marre on March 21, 2018. Marre used the same fraudulent titles and entities to T-Mobile as described above.

**AT&T**

**Count 8**

On May 31, 2018, Marre called the AT&T law enforcement line claiming that he had an exigent circumstance (suicidal subject) for the phone number 432-741-1771. Marre called AT&T three separate times. When AT&T tried to confirm the "Colorado Public Safety Task Force" they were unsuccessful. Each time AT&T employees questioned Marre, he came up with various excuses. One was that his supervisor was in a meeting. Another was that the "task force" was made up of multiple agencies so they would not have a set office with dispatch. Eventually, Marre claimed his supervisor was "Ryan Smith." When AT&T called Marre's land line, Marre had arranged to have Ryan Medhurst answer and provide confirmation as Marre's law enforcement

14

supervisor.  AT&T recorded these calls.  Co-conspirators C.D. and Wayne Tyner confirmed the person on the phone claiming to be Ryan Smith and falsely verifying Marre as a law enforcement officer was Ryan Medhurst.

Further, analysis of call logs from Marre's phone show him call Medhurst 20 times on May 31, 2018.  Marre's phone records also show the three recorded calls to AT&T.  There are calls to Medhurst listed both immediately before and immediately after the AT&T calls in which both Marre and Medhurst fraudulently claim to be law enforcement to the phone carrier in an attempt to unlawfully obtain cell phone location information.

## VI.  ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.      The base guideline is §2H3.1, with a base offense level of **9**.

B.      The defendant should receive a **3-level increase** for committing the offense for direct or indirect commercial advantage or economic gain pursuant to §2H3.1(b)(1).

C.      There are no victim-related or obstruction adjustments.

D.      The government posits that because each count correlates with a different subscriber victim, whose information the defendant unlawfully obtained, the counts do not involve the same victim.  §3D1.2(b).  The counts are not otherwise closely related (§3D1.2(a),(c),(d)), and, therefore, the counts would not group and each would have the same offense level.  Because there are more than five units, the government believes that the defendant should receive a **5-level increase**.  The defendant believes that the multiple count adjustment does not apply because the conduct is part of a common scheme or plan pursuant to §3D1.2(d).

E.      The adjusted offense level for the government's position would be **17**. The adjusted offense level for the defendant' position would be **12**.

F.      <u>Acceptance of Responsibility</u>: The defendant should receive a **3-level decrease** for acceptance of responsibility under §3E1.1, resulting in a total offense level **14** for the government's calculation.

Under the defendant's calculation, the defendant would receive a **2-level decrease** for acceptance of responsibility under §3E1.1 (as the offense level would be less than 16), resulting in a total offense level **10.**

G.      <u>Criminal History Category</u>:  The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's Criminal History Category would be **I**.

H.      Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

I.    Imprisonment: The advisory guideline range of imprisonment for all counts resulting from an offense level of **14** and a Criminal History Category I is **15 – 21 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 15 months (bottom of Category I) to 46 months (top of Category VI).

The advisory guideline range of imprisonment for all counts resulting from an offense level of **10** and a Criminal History Category I is **6 – 12 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 6 months (bottom of Category I) to 30 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the counts of conviction.

J.    Fine: Pursuant to guideline §5E1.2, assuming the estimated offense level of **14**, the fine range for this offense would be **$ 7,500 to $75,000**, plus applicable interest and penalties.

Assuming the estimated offense level of **10**, the fine range for this offense would be **$ 4,000 to $40,000**, plus applicable interest and penalties.

K.    Supervised Release: Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term is **no more than 3 years**.

L.    Restitution: Restitution is not applicable.

The parties understand that, although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

17

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

/////

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the parties' entire agreement. There are

no other promises, agreements (or "side agreements"), terms, conditions,

understandings, or assurances, express or implied. In entering this agreement, neither

the government nor the defendant has relied, or is relying, on any terms, promises,

conditions, or assurances not expressly stated in this agreement.

Date: _____    _____
                      Matthew Marre
                      Defendant

Date: _____    _____
                      Matthew Belcher
                      Attorney for Defendant

Date: _09/17/2019_    _____ WSBA #28743
                      Gregory A. Holloway, Assistant U.S. Attorney
                      Attorney for the Government